UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                                 )
Mount Vernon Fire Insurance       )
Company,                          )
          Plaintiff,              )
                                  )
     v.                           )   C.A. No. 08-224 S
                                  )
Stagebands, Inc.¹ d/b/a Giza,     )
Anthony Massarone, and            )
TEL Realty, LLC,                  )
                                  )
          Defendants.             )
_____ )
```

### DECISION AND ORDER

WILLIAM E. SMITH, United States District Judge.

Mount Vernon Fire Insurance Company filed this declaratory judgment action pursuant to 28 U.S.C. § 2201, seeking a declaration that it has no duty to defend or indemnify Stagehands, Inc. d/b/a Giza, its president and owner Anthony Massarone (collectively Giza), or Giza's landlord TEL Realty. The underlying suit involves personal injury claims by a patron who was injured at a Providence nightclub, and at issue is an assault and battery exclusion in the policy. Before the Court are cross-motions for summary judgment by Mount Vernon and Giza. For the following reasons, Mount Vernon's motion will be granted.

---

¹ Mount Vernon's complaint (and its policy) incorrectly names Defendant Stagebands, Inc. as Stagehands, Inc.

I.   <u>Factual Background and the Underlying Lawsuit</u>

On July 29, 2006, Victor Cortes was the victim of a shooting outside the Giza nightclub in Providence.  Cortes claims to have suffered a severe and permanent head injury resulting in brain damage.  On or about April 17, 2008, Cortes sued Giza in Rhode Island Superior Court.  He then added a claim against TEL Realty, the owner and lessor of the property.[2]

Cortes brings a host of negligence allegations against Giza, including failure to:  provide adequate security and parking; provide experienced employees; maintain control of employees, which contributed to an "atmosphere of confusion and mayhem"; and adhere to its business plan with respect to the type of music played, clientele, parking and security -- such that medical personnel were delayed in treating Cortes following the gunshot due to parking congestion.  (Doc. No. 31-2 ex. C); (Compl. ¶ 37, <u>Cortes v. Stagebands, Inc.</u>, C.A. No. 08-2957 (R.I. Super. Ct. Feb. 24, 2009) (such "delay in response caused further injuries to [Cortes]")).  Against TEL Realty, Cortes alleges the parking area was negligently designed, configured, maintained and supervised, such that rescuers could not timely render aid, resulting in further injury.

Mount Vernon is defending the Cortes lawsuit under a reservation of rights, and commenced this single-count declaratory

---

[2] All parties agree the controlling Cortes complaint is this Second Amended Complaint.

judgment action on the question of coverage. Diversity jurisdiction is proper under 28 U.S.C. § 1332, and there is no question Rhode Island law controls.

## II.  The Policy

Mount Vernon's Commercial Package Policy number CP 2122268A covered Giza and TEL Realty (as an additional insured) at the time of the incident.  The initial coverage clause provides:

> We [Mount Vernon] will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

The policy contains the following exclusion:

ASSAULT AND BATTERY EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

It is agreed that no coverage shall apply under this Coverage Part for any claim, demand or suit based on Assault and Battery, or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of the insured, his employees, patrons or any other person.

It is further agreed that claims, accusations or charges of negligent hiring, placement, training or supervision arising from actual or alleged assault or battery are not covered and no duty to defend any insured from such claims, accusations and charges is provided.

3

All other terms and conditions remain unchanged.

The friction in this case centers on this exclusion. Mount Vernon argues that it precludes coverage because Cortes's injuries are "based on" the shooting at Giza (or acts or omissions in connection with the shooting), and under Am. Commerce Ins. Co. v. Porto, 811 A.2d 1185 (R.I. 2002) his negligence theories as to other contributing causes of injury are of no moment. Giza retorts that although Cortes was shot, the possibility of a separate and independent injury resulting from the delayed care triggers Mount Vernon's duty to defend as a matter of law. TEL Realty largely mirrors Giza's argument in opposing Mount Vernon's motion, but contends Cortes's injuries must be "more fully defined" before the issue can be resolved.

III. Standard

Summary judgment is proper if "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of fact is genuine if it "may reasonably be resolved in favor of either party." Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008) (internal citation omitted). A material fact "has the capacity to sway the outcome of the litigation under the applicable law." Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995). On cross-motions for summary judgment, the Court considers each movant separately. O'Donnell v. Twin City Fire Ins.

4

Co., 40 F. Supp. 2d 68, 71 (D.R.I. 1999); Barnes v. Fleet Nat'l Bank, N.A., 370 F.3d 164, 170 (1st Cir. 2004) (court determines whether either party deserves judgment based on undisputed facts).

Although all conflicts must be resolved and all reasonable inferences drawn in the nonmovant's favor, see Calvi v. Knox County, 470 F.3d 422, 426 (1st Cir. 2006), the nonmovant cannot rest on "conclusory allegations, improbable inferences, [or] unsupported speculation" to avoid summary judgment. Welch v. Ciampa, 542 F.3d 927, 935 (1st Cir. 2008) (quoting McCarthy v. Nw. Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995)).

IV.  Discussion

The parties tee up a threshold question -- though the answer does not change the end result.  The question is whether (as Giza and TEL Realty argue) the widely-recognized pleadings test as to the potential for coverage dictates Mount Vernon's duty to defend; or, whether (as Mount Vernon argues) the dispute is beyond the pleadings test because Mount Vernon is already defending, and thus the Court can determine the ultimate question of coverage as a matter of law based on undisputed extrinsic facts.

Some familiar principles help flesh this out.  In the usual course, an insurer has two obligations: the duty to defend (measured by the factual allegations of the underlying complaint under the pleadings test); and the duty to indemnify (dependent upon whether the plaintiff suing an insured prevails).  See Emhart

Indus., Inc. v. Home Ins. Co., 515 F. Supp. 2d 228, 236-37 (D.R.I. 2007), aff'd, 559 F.3d 57 (1st Cir. 2009); Mellow v. Med. Malpractice Joint Underwriting Ass'n of R. I., 567 A.2d 367, 368 (R.I. 1989). "[A]n insurer's duty to defend is broader than its duty to indemnify." Employers Mut. Cas. Co. v. PIC Contractors, Inc., 24 F. Supp. 2d 212, 215 (D.R.I. 1998). If there is no duty to defend, there can be no duty to indemnify.

But the duty to defend, once established, is not interminable. As Mount Vernon points out, this Court has recognized (albeit in a different context) an insurer's ability to, in essence, halt its duty by showing as a matter of law that claims could never be within the bounds of coverage. See Emhart, 515 F. Supp. 2d at 238-39, 242-43 n.18, 249 ("[O]nce triggered, the duty to defend continues until a finding that the claims do not fall within the risk of coverage."); Providence Journal Co. v. Travelers Indem. Co., 938 F. Supp. 1066, 1074, 1079 (D.R.I. 1996) (deciding applicability of pollution exclusion clause as a matter of law); Conway Chevrolet-Buick, Inc. v. Travelers Indem. Co., 136 F.3d 210, 213-15 (1st Cir. 1998) (recognizing that an insurer can "get clear of" its duty to defend by demonstrating as a matter of fact that no coverage can exist) (citing Sterilite Corp. v. Cont'l Cas. Co., 458 N.E.2d 338, 343 (Mass. App. 1983)).

The bottom line here is that whether measured against the face of Cortes's complaint or against all record evidence (each of which

will be addressed in turn), Mount Vernon has established it can "confute" any such potential for coverage as a matter of law. Emhart, 515 F. Supp. 2d at 239; see Montrose Chem. Corp. v. Superior Court, 861 P.2d 1153, 1159 (Cal. 1993) (agreeing with lower court that "where extrinsic evidence establishes that the ultimate question of coverage can be determined as a matter of law on undisputed facts, [there is] no reason to prevent an insurer from seeking summary adjudication that no potential for liability exists and thus that it has no duty to defend"); 14 Couch on Insurance § 200:47 (3d ed. 2007) ("[A]n insurer's duty to defend arises out of a potentially covered claim and lasts until the conclusion of the underlying lawsuit, or until it has been shown that there is no potential for coverage."); Appleman on Insurance § 136.2[D] (2d ed. 2006) ("[W]hen there are covered and non-covered claims in the same lawsuit, the insurer is obligated to provide a defense to the entire suit, at least until it can limit the suit to those claims outside of the policy coverage.") (all emphasis added).

A.   Pleadings Test

This analysis zeroes in on the underlying complaint and the policy. Regardless of the merits of a claim against an insured, an insurer must defend if the facts alleged fall or potentially fall within the scope of coverage. Flori v. Allstate Ins. Co., 388 A.2d 25, 26 (R.I. 1978); Employers' Fire Ins. Co. v. Beals, 240 A.2d

7

397, 402 (R.I. 1968).   An insured must show the complaint falls
within the policy; the insurer must prove an exclusion applies.
Gen. Accident Ins. Co. of Am. v. Am. Nat'l Fireproofing, Inc., 716
A.2d 751, 757 (R.I. 1998).   Doubts about the potential for coverage
must be resolved in favor of the insured.   Beals, 240 A.2d at 403.
In this case, when Cortes's complaint is placed alongside Mount
Vernon's policy, the question is whether his claims are "based on"
assault and battery or otherwise within the exclusion.[3]

In most jurisdictions, similar broad exclusions bar coverage
for negligence claims when the underlying occurrence is an assault
and battery.   See, e.g., Winnacunnet Coop. Sch. Dist. v. Nat'l
Union Fire Ins. Co. of Pittsburgh, Pa., 84 F.3d 32, 33-38 (1st Cir.
1996) (under New Hampshire law, finding that an exclusion for claim
arising out of assault bars coverage for allegations that insured
negligently allowed assault to occur); Mount Vernon Fire Ins. Co.
v. Creative Hous. Ltd., 668 N.E.2d 404, 406 (N.Y. 1996) (under New
York law, denying coverage for claim against insured for negligent
failure to maintain safe premises to prevent an assault); Lloyds of
London v. Fat Cat Bar & Grill, No. Civ.A.01-30015-MAP, 2002 WL
823762, at *3-4 (D. Mass. Apr. 23, 2002) (under Massachusetts law,
no coverage for negligent supervision claim under "but for" theory
where injuries still "originate[d] or flow[ed] from" assault).
These decisions focus on the incident or operative act causing

_____

[3] No one disputes the shooting was an assault and battery.

8

injury an insurer intended to exclude (assault), not the theory of legal liability pled.

While no Rhode Island court has weighed in on this precise issue, the Porto decision comes close.[4] Porto addresses whether an exclusion for injury "arising out of"[5] sexual molestation barred coverage for a boy scout leader alleged to have negligently supervised the molester. 811 A.2d at 1189-90. The scout leader argued that because his potential liability arose out of negligence and not sexual assault, the exclusion was inapplicable. Id. The Supreme Court disagreed, explaining:

> In insurance cases, the concern is ordinarily not with the question of 'culpability' or why the injury occurred, but only with the nature of the injury and how it physically happened, which must then be compared with the language of the insurance policy to determine whether this type of injury from this type of physical cause was intended to be covered by the policy. (emphasis added).

Id. at 1195 (quoting 7 Couch on Insurance 3d § 101:41 at 101-131-32). Accepting the insurer's broad interpretation of what "arises out of" excluded conduct, Porto cited extensively from a New York assault and battery exclusion case for the proposition that if the

---

[4] See also Anglo Am. Ins. Co. v. Shooters at India Point, Inc., 959 F. Supp. 115 (D.R.I. 1997) (denying coverage under an assault and battery/negligent hiring exclusion where patron claimed Shooters failed to protect and provide for the safety of customers, and failed to come to the patron's aid).

[5] The phrases "arising out of" and "based on" are generally considered interchangeable. Mount Vernon Fire Ins. Co. v. Creative Hous. Ltd., 668 N.E.2d 404, 406 (N.Y. 1996). No party argues otherwise or suggests "based on" is ambiguous.

excluded conduct is a cause of claimed injuries, the injuries have a causal connection to and thus "arise out of" the excluded act. Id. at 1196 ("If the type of injuries suffered are excluded from coverage under the language of the policy, no right to coverage or duty to defend the insured exists - even if, as here, the insured's conduct is an alleged proximate cause of the injuries in question."); see also Howard v. Guidant Mut. Ins. Group, 785 A.2d 561, 562-63 (R.I. 2001) (claims relating to a letter read aloud "[arose] out of" and "result[ed] from" sexual misconduct and were excluded from coverage where letter "would never have been written had the sexual misconduct never occurred" and statements were "intrinsically connected" to the excluded conduct).

Turning to Cortes's complaint, Giza and TEL Realty concede, and rightfully so, that most of the allegations (inadequate security, inexperienced employees, and so forth) are excluded. The crux of the dispute, then, is the "parking congestion caused a delay in care which caused further injury" allegation. Giza and TEL Realty point out that although these events would not have happened but for the shooting, Porto leaves the door open for coverage if there is a "separate, independently caused bodily injur[y]" resulting "solely" from the insured's negligence. Id. at 1196-97. Putting all their eggs in this basket, they contend the aggravation or worsening of Cortes's gunshot injury due to their negligence is separate and not based on the assault.

10

This theory is not enough to trigger the "potential" for coverage. Giza and TEL Realty's argument is that the initial shooting event does not matter because their conduct, not the assault, is alleged to have caused some distinct harm. But the facts of this case do not reveal a "separate and independent" injury based solely on their negligence of the kind <u>Porto</u> requires to cut off a connection to excluded conduct. Compare <u>United Nat'l Ins. Co. v. Penuche's, Inc.</u>, 128 F.3d 28, 32 (1st Cir. 1997) (patron's spinal injury did not arise out of assault because employee's "bear hug" in breaking up fight caused patron to fall; thus, all injuries and damages stemmed from "a discrete intervening act of alleged negligence" that cannot be said to "arise out of earlier actions").[6]   Cortes's complaint lacks any discrete, intervening act of negligence like the <u>Penuche</u> bear hug where the victim's injuries "<u>were not caused by</u> the blows he received in the fight." <u>Id.</u> at 32 (emphasis added). There is no question Cortes's injuries were caused by the gunshot -- even if the parking layout was an after-the-fact contributing and worsening cause.

In sum, the fact that Giza and TEL Realty's parking design negligence may have affected Cortes after he was shot does not make

---

[6] Compare <u>also</u> <u>Am. Best Food, Inc. v. Alea London, Ltd.</u>, 158 P.3d 119, 127 (Wash. Ct. App. 2007) (patron's allegation that employees "dumped him back on the sidewalk" after he was shot did not arise out of assault because harm from moving a wounded patron was "distinct from the prior harm caused by the assault" and constituted a discrete and intervening act of negligence).

11

it unrelated and independent of the assault.  Rather, the parking design negligence is potentially another proximate cause of Cortes's injuries, all of which remain causally connected to the shooting.  See Porto, 811 A.2d at 1200 n.9 ("The alleged existence of multiple proximate causes for the bodily injuries in question does not negate the allegation that sexual molestation was one of them.  This is all that the policy required for the exclusion to apply.").  There can be no doubt these injuries were precisely what Mount Vernon, as an insurer of a nightclub, intended to exclude.  Id. at 1196.  That some jurisdictions may reach a different result under a different analysis does not change the calculus.[7]

B.   Applicability of Exclusion

The thrust of Mount Vernon's motion is that even if Cortes's complaint triggered a duty to defend under the pleadings test,

---

[7] Giza and TEL Realty point to Bucci v. Essex Ins. Co., 393 F.3d 285 (1st Cir. 2005) and Planet Rock, Inc. v. Regis Ins. Co., 6 S.W.3d 484 (Tenn. Ct. App. 1999).  But these decisions reject many of the same concepts Porto accepts.  Compare Porto, 811 A.2d at 1194-96 with Bucci, 393 F.3d at 290-91 ("In interpreting insurance contracts, Maine law does not use the 'but for' test advocated by Essex.") and Planet Rock, 6 S.W.3d at 491 ("[C]ourts have discussed the key phrase, 'arising out of,' [and] followed the view that the causation factor is confined to one incident.  While this view is adopted by a number of courts in other jurisdictions, it does not represent the law in Tennessee.").  Though Porto's reasoning may be questionable in other scenarios, ignoring its applicability is a luxury the Court lacks.  See Rodriguez v. Suzuki Motor Corp., No. 07-2662, --- F.3d ---, 2009 WL 1748502, *3 (1st Cir. June 22, 2009); Norton v. McOsker, 407 F.3d 501, 506 (1st Cir. 2005); Catex Vitol Gas, Inc. v. Wolfe, 178 F.3d 572, 576 (1st Cir. 1999) (noting courts must rely on pronouncements of state supreme court).

there is no actual evidence of any such separate injury unconnected to the shooting and solely due to parking issues.  Thus, Giza and TEL Realty failed to meet their burden at the summary judgment stage to do more than simply say it is so, and come forward with evidence from which a fact finder could conclude the exclusion does not apply.

It is no surprise Giza and TEL Realty cling to the pleadings test.[8]  The sole fact proffered (at the eleventh hour, over Mount Vernon's objection) to show an injury not based on assault is a response in the underlying action to an interrogatory asking Cortes each injury he claimed he suffered as a result of the "incident":

> I was shot in the head and as a result suffered irreversible permanent brain damage.  I also suffered some additional minor injuries such as a fractured toe.

(Doc. No. 49-2 ex. 1); (Pl.'s Resp. to Def.'s Interrog. # 4 (<u>Cortes v. Stagebands, Inc.</u>, C.A. No. 08-2957, (R.I. Super. Ct. Feb. 24, 2009).)

Giza and TEL Realty say the toe is akin to a second injury that a jury could find to be caused by parking negligence, not the gunshot.

In true red herring fashion, the toe argument proves too much. There is no basis for finding the toe injury was unrelated to the shooting -- no link whatsoever from it (or any other "minor

---

[8] When asked how a fact finder could tease apart Cortes's head injury associated with Giza's negligence from his head injury associated with the gunshot, counsel replied: "[i]t's enough that it's alleged."  (<u>See</u> Hr'g Tr. 28:8-12, June 11, 2009.)

injuries") to the delayed treatment or parking congestion or anything else for that matter. Moreover, the evidence lacks "probative force" as a matter of law. <u>Garside v. Osco Drug, Inc.</u>, 895 F.2d 46, 49-50 (1st Cir. 1990). This is because it is undisputed that the response was not based on Cortes's personal knowledge, as he does not recall what occurred at Giza and cannot "determine if my fractured toe resulted from the incident that night or <u>some other cause unrelated to that night</u>." (Doc. No. 54 (attached Declaration of Victor Cortes) (emphasis added)); <u>see</u> <u>also</u> (Doc. No. 49-2 ex. 1); (Pl.'s Resp. to Def.'s Interrog.) ("I do not have any memory of the incident in question. I know that I was shot in the head.").) The ruminations about the toe injury simply invite conjecture, and in no way reliably demonstrate that disputed material facts render the applicability of the exclusion uncertain. <u>See</u> <u>Garside</u>, 895 F.2d at 48; <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-26 (1986).[9]

TEL Realty's last plea (echoed by Giza) is that the coverage question is not ripe because discovery in Cortes's case is ongoing,

---

[9] TEL Realty acknowledges Cortes "can't tell how the toe was fractured" but says "that doesn't mean that at trial his attorney will not be able to prove the circumstances of causation for that toe fracture, and they may fall within a scenario separate and apart from the shooting." (<u>See</u> Hr'g Tr. 17:14-19, June 11, 2009.) Such "conclusory allegations, improbable inferences, [and] unsupported speculation" cannot survive Mount Vernon's challenge. <u>Welch v. Ciampa</u>, 542 F.3d 927, 935 (1st Cir. 2008) (quoting <u>McCarthy v. Nw. Airlines, Inc.</u>, 56 F.3d 313, 315 (1st Cir. 1995) (further citation omitted)).

and his injuries need further exploration.   Otherwise, TEL Realty
and Giza insist, this declaratory judgment action will become a
"dress rehearsal" of the underlying case.[10]  <u>Beals</u>, 240 A.2d at 400.
But resolving coverage here does not require the Court to consider
whether there were adequate parking plans, or whether congestion
contributed to Cortes's injury and, if so, to what extent.   This is
because such circumstances would still fall within the exclusion,
and nothing in this decision results in a duplication of effort or
creates a risk of inconsistent results.   <u>Compare</u> <u>Aetna Cas. & Sur.</u>
<u>Co. v. Kelly</u>, 889 F. Supp. 535 (D.R.I. 1995) (granting in part
motion to stay declaratory judgment action pending underlying
litigation where coverage depended in part on determination of
factual issues central to underlying case).

---

[10] On this point, TEL Realty submitted Providence License
Review Board hearing transcripts regarding gates and exits at and
outside Giza.   Such materials may shed light on TEL Realty's
negligence, but they lack relevance to the coverage question
(especially when offered in the context of the "concurrent cause"
doctrine, not the law in this jurisdiction).   Mount Vernon's Motion
to Strike (Doc. No. 39) is thus denied as moot.

V.    Conclusion

For the foregoing reasons, Mount Vernon's Motion for Summary Judgment is GRANTED and Giza and Anthony Massarone's Cross-Motion is DENIED.   JUDGMENT shall enter declaring that Mount Vernon has no duty to defend or indemnify Defendants in civil action 08-2957 entitled Victor Cortes v. Stangebands, Inc. d/b/a Giza, et al. It is so ordered.


_____
William E. Smith
United States District Judge
Date:   7/21/09

16